UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KARL GREGOIRE,

        Plaintiff,

    v.

SAN FRANCISCO BAY AREA RAPID
TRANSIT DISTRICT,

        Defendant.

Case No.  25-cv-02150-TSH

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR
SANCTIONS; ORDER DENYING
MOTION TO CHANGE DEADLINES**

Re: Dkt. Nos. 34, 38

## I.    INTRODUCTION

Defendant San Francisco Bay Area Rapid Transit District (BART) moves for sanctions against Plaintiff Karl Gregoire.  ECF No. 34.  Plaintiff filed an Opposition (ECF No. 40) and BART filed a Reply (ECF No. 43).  BART has also filed a motion to extend deadlines as to BART only, to which Plaintiff has not responded.  ECF No. 38.  The Court finds these matters suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the motion for sanctions and **DENIES** the motion to extend deadlines.[1]

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 10, 18.

## II.    BACKGROUND

### A.    Factual Background

Plaintiff is a former BART employee who worked as a Fare Inspection Officer.  First Am. Compl. ¶¶ 1-2, ECF No. 21.  On October 14, 2021, BART's Board of Trustees voted 8–1 to require all employees to be fully vaccinated for COVID-19 by December 13, 2021.  *Id.* ¶ 15. BART's rationale asserted that unvaccinated employees are at greater risk of contracting and spreading COVID-19 within the workplace, BART facilities, and to the public.  *Id.* ¶ 16.  Prior to December 13, vaccinated and unvaccinated BART employees worked side by side under sanitation and masking guidelines.  *Id.* ¶¶ 17, 21.  BART allowed employees to request religious exemptions and accommodations to the vaccination requirement and employed a uniform form-based process for such requests.  *Id.* ¶¶ 19-20, 22.

Plaintiff submitted a request for a religious exemption, stating his Christian beliefs conflicted with the mandate and proposing weekly or twice-weekly COVID-19 testing as a reasonable accommodation.  *Id.* ¶¶ 24-28.  In December 2021 BART denied Plaintiff's request and presented four options identical to those given to all employees who remained unvaccinated: comply with the vaccination mandate; retire if qualified; resign; or do nothing and be terminated. *Id.* ¶ 30.  Plaintiff alleges BART did not engage in a genuine interactive process to explore accommodations for his position.  *Id.* ¶ 33.  Faced with these options, Plaintiff chose not to be vaccinated and was terminated.  *Id.* ¶¶ 31-32.

Plaintiff timely filed an EEOC charge and received a right-to-sue letter on December 4, 2024.  *Id.* ¶ 11.

### B.    Procedural Background

#### 1.    Pleadings

On March 2, 2025, Plaintiff filed his original complaint against the Board of Trustees of San Francisco Bay Area Rapid Transit District.  ECF No. 1.[2]  On July 6, 2025 Plaintiff filed an amended complaint, alleging six causes of action: (1) religious discrimination under the Fair

---

[2] On June 24, 2025, the parties filed a stipulation to seek leave to amend the complaint to identify BART as the correct defendant, which the Court granted.  ECF Nos. 14, 17.

United States District Court
Northern District of California

Employment and Housing Act, Cal. Gov't Code §12940 et seq., (2) violation of civil rights under 42 U.S.C. § 1983; (3) violation of Equal Protection under 42 U.S.C. § 1983; (4) religious discrimination under Title VII the Civil Rights Act, 42 U.S.C. § 2000e, et seq.; (5) violation of the Free Exercise Clause under 42 U.S.C. § 1983; and (6) retaliation under Title VII the Civil Rights Act, 42 U.S.C. § 2000e, et seq. BART filed its Answer on July 22, 2025. ECF No. 22.

**2.      Case Management Order**

On June 6, 2025, the Court issued a case management scheduling order with the following deadlines:

Close of Fact Discovery - 4/16/2026

Close of Expert Discovery - 7/9/2026

Deadline to File Dispositive Motions - 8/6/2026

Jury Trial - 1/25/2027

ECF No. 12. The Court also referred the parties to another magistrate judge for a settlement conference to take place by January 30, 2026. *Id.*

**3.      Written Discovery Requests and Meet and Confer Efforts**

On July 22, 2025, BART served Plaintiff with written discovery, specifically Requests for Admissions (Set One), Special Interrogatories (Set One), and Requests for Production of Documents (Set One). Tran Decl. ¶ 9 & Ex. A, ECF No. 34-2. After Plaintiff failed to respond, on August 29 BART sent a meet and confer letter requesting responses by September 8. *Id.* ¶ 11 & Ex. B. Plaintiff again failed to respond. *Id.*

On September 29 BART's counsel emailed Plaintiff's counsel regarding the outstanding discovery responses. *Id.* ¶ 12 & Ex. C. In response, Plaintiff's counsel stated Plaintiff was preparing responses and would serve them by November 2, 2025. *Id.* ¶ 13 & Ex. D. After Plaintiff failed to provide responses by November 2, on November 4 BART's counsel emailed Plaintiff's counsel requesting responses to its discovery requests. *Id.* ¶ 15 & Ex. E. On November 7 Plaintiff's counsel stated she would provide responses once she received verifications from Plaintiff. *Id.* On November 14 Plaintiff served responses to BART's Requests for Admissions (Set One) and Special Interrogatories (Set One) but did not respond to BART's Requests for

Production of Documents (Set One). *Id*. ¶ 16 & Ex. F.

On December 11, 2025, BART sent Plaintiff's counsel a meet and confer letter informing Plaintiff of the deficiencies in his responses to BART's Request for Admission (Set One) and Special Interrogatories (Set One), and noting it had not received responses to BART's Requests for Production of Documents (Set One). *Id.* ¶ 17 & Ex. G. BART requested Plaintiff amend his responses no later than December 19, noting it would require compliant supplemental responses and document production before the parties' January 12 settlement conference. *Id.* ¶ 18. Plaintiff again failed to respond. *Id.*

On December 24, 2025, BART sought an informal discovery conference with the Court to facilitate resolution of Plaintiff's outstanding discovery before the parties' settlement conference. Tran Decl. ¶ 19 & Ex. H. The Court attempted to schedule a telephone conference at two different times, but the conference could not proceed because Plaintiff's counsel did not call in either time. ECF Nos. 27-28. As such, the Court ordered the parties to file a joint discovery letter brief by January 6 setting forth their respective arguments concerning the discovery dispute at issue. ECF No. 29.

On January 6, 2026, BART sent Plaintiff's counsel a draft joint discovery letter to provide his position, but Plaintiff failed to respond, leaving BART to submit the letter unilaterally. Tran Decl. ¶ 23 & Ex. J; ECF No. 31. On January 13 the Court found that Plaintiff's failure to "file[] anything at all in response to the Court's order for the parties to file a joint discovery letter brief" constituted "a waiver of all opposing arguments" and granted BART's motion to compel. ECF No. 33. The Court ordered Plaintiff to serve complete responses to BART's discovery requests within 30 days. *Id.* Plaintiff did not respond by the deadline.

On March 9, 2026, Plaintiff served a response to BART's Request for Production of Documents along with an eight (8) page document production. Tran Decl. ¶ 31 & Ex. P. These responses are signed by counsel but are not verified by Plaintiff. *See id.* at 5 ("VERIFICATION" section dated March 9, 2026, but not signed).

### 4. Settlement Conference

On June 6, 2025, the Court referred the parties to another magistrate judge for a settlement

United States District Court
Northern District of California

conference to take place by January 30, 2026. ECF No. 12. On June 12 Magistrate Judge Alex G. Tse scheduled a pre-settlement scheduling call for July 1, 2025, directing the parties to appear by Zoom. ECF No. 13. On July 1 BART's counsel appeared at the pre-settlement conference but Plaintiff's counsel did not. ECF No. 19. Judge Tse scheduled a settlement conference on November 17, 2025, and directed Plaintiff to communicate a settlement demand one week before settlement conference statements were due. ECF Nos. 19-20.

On October 23, 2025, the parties filed a stipulation to continue the settlement so BART could obtain discovery from Plaintiff in advance of the conference. ECF No. 23. The Court granted the request and extended the settlement conference deadline to July 30, 2026. ECF No. 24. On October 24 Judge Tse ordered a rescheduled settlement conference to occur on January 12, 2026. ECF No. 25. On the date of the conference, two BART representatives appeared with their counsel, but neither Plaintiff nor his counsel appeared. Tran Decl. ¶ 25; ECF No. 32 (Minute Entry). Plaintiff also failed to serve a settlement demand prior to the conference. Tran Decl. ¶ 24.

### 5. Plaintiff's Deposition and Further Meet and Confer Efforts

On January 15, 2026, BART served notice of Plaintiff's deposition to take place on March 3, 2026. *Id.* ¶ 27 & Ex. L. On February 24 BART emailed Plaintiff's counsel to confirm the deposition, but counsel did not respond. *Id.* ¶ 28 & Ex. M. Neither Plaintiff nor his counsel appeared at the March 3 deposition. *Id.* ¶ 29 & Ex. N.

On March 6, 2026, Plaintiff's counsel requested that Plaintiff's deposition be re-scheduled, also stating that Plaintiff would serve discovery responses by the following Monday, March 9. *Id.* ¶ 30 & Ex. O. On March 9 Plaintiff served amended responses to BART's requests for production along with an eight-page document production. *Id.* ¶ 31 & Ex. P. Plaintiff did not provide amended responses to BART's requests for admission and interrogatories. *Id.*

On March 11, 2026, BART emailed Plaintiff's counsel with a summary of the discovery issues and proposed that, in lieu of it filing a motion for sanctions, Plaintiff could pay BART the amount of $23,362.50, representing what counsel claimed as BART's fees and costs to date "resulting from Plaintiff's dilatory prosecution of this case." *Id.* ¶ 32 & Ex. Q. BART requested a response by March 13, but Plaintiff did not respond. *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

### 6.    Motion for Sanctions and First Order to Show Cause

On April 1, 2026, BART filed its motion for sanctions, seeking terminating sanctions under Federal Rules of Civil Procedure 37, 41(b) and the Court's inherent authority.  ECF No. 34.  BART seeks terminating sanctions in the form of dismissal of this action entirely with prejudice and/or entry of default judgment against Plaintiff for his failures to (1) participate in discovery, (2) abide by this Court's orders, and (3) prosecute his case since its inception.  Alternatively, BART requests issue sanctions prohibiting Plaintiff from supporting his claims or from introducing evidence (including his own testimony) into evidence.  BART also requests monetary sanctions in the amount of $31,288.75.

After Plaintiff failed to file an opposition, the Court vacated the May 7, 2026 noticed hearing date and order him to show cause why this case should not be dismissed for failure to prosecute and failure to comply with court deadlines.  ECF No. 37.  The Court directed Plaintiff to file a declaration by April 23, 2026 and simultaneously file either an opposition to BART's motion in compliance with Civil Local Rule 7-3(a) or a statement of nonopposition in compliance with Local Rule 7-3(b).

### 7.    Response to First Show Cause Order and Discharge

On April 24, 2026, Plaintiff filed a response to the show cause order (ECF No. 39), an opposition to BART's motion (ECF No. 40), and the declaration of his counsel, Jessica Barsotti (ECF No. 40-1).  Ms. Barsotti indicates that in December 2025 her law-practice partner retired unexpectedly, leaving her as the sole attorney responsible for managing their firm and all its matters, including this case.  Barsotti Decl. ¶ 3.  Around the same time, counsel states she experienced a relapse of a pre-existing medical condition in the wake of the death of a close family member the week of Christmas.  *Id.* ¶ 4.  These events created a serious medical and emotional crisis that required medical intervention.  *Id.*  As a result, Ms. Barsotti states she entered a medically supervised treatment facility for approximately 75 days on December 22, 2025 to address the relapse and stabilize her condition.  *Id.* ¶ 5.  During that time, she was under professional care and was unable to attend court-scheduled conferences, respond to discovery, or prepare written motions, including an opposition to BART's motion for sanctions.  *Id.*  Ms.

Barsotti states she did not have time to make arrangements for other counsel to manage her cases at the time of entry. *Id.*

Upon returning from the facility, Ms. Barsotti states she immediately reached out to BART's counsel on March 6, 2026 to ask to reschedule Plaintiff's deposition at a mutually agreeable time, but BART never requested another time for the deposition. *Id.* ¶ 6. Ms. Barsotti also responded to the joint discovery brief and provided the same to BART in March 2026, also providing further discovery responses. *Id.* ¶ 7.

After returning to active practice, Ms. Barsotti found the stress of managing the firm alone, combined with the ongoing personal loss, led to a near-relapse of her condition. *Id.* ¶ 8. Ms. Barsotti states she entered the same treatment facility to receive additional support and stabilization from April 2 to 24, 2026. *Id.* Although she arranged to have her workload covered during this period, she was unaware of BART's sanctions motion. *Id.*

During these combined periods of treatment, Ms. Barsotti states she was unable to attend the settlement conference; respond to the Court's discovery order; attend or otherwise arrange for Plaintiff's noticed deposition; and file an opposition to BART's motion for sanctions. *Id.* ¶ 9. She states she is in the process of hiring an assistant to assist with firm administration and reforming the firm as a solo practice, and she is prepared to attend a settlement conference and deposition when they are rescheduled. *Id.* ¶¶ 10-11.

On April 27, 2026, the Court discharged the show cause order. ECF No. 41.

**8.      Second Order to Show Cause**

Upon reviewing Plaintiff's opposition to BART's sanctions motion, the Court was unable to locate three of the four cases cited therein, leading to concern that these inaccuracies suggested the possible use of generative artificial intelligence tools resulting in hallucinations. As such, the Court issued a second show cause order, directing Ms. Barsotti to file a declaration by May 4, 2026 that itemized every legal authority-based statement in the opposition, disclosed how each was created (including any AI use), described the steps taken to verify accuracy, and provided corrected citations if needed. ECF No. 42. After Ms. Barsotti failed to respond, the Court issued sanctions against her and discharged the second show cause order. ECF No. 45.

United States District Court
Northern District of California

**9.    Third Order to Show Cause**

BART filed its reply brief on May 4, 2026.  ECF No. 43.  In its reply, BART presented evidence that portions of Ms. Barsotti's declaration in response to the first show cause order appear to be inaccurate.  Specifically, although Ms. Barsotti declared that her law-practice partner retired unexpectedly in December 2025, BART provided an email dated April 3, 2026 from Ms. Barsotti's former law-practice partner, Rita Barnett-Rose, which was sent to Ms. Barsotti and BART's counsel in this case, stating "I have been retired from the practice of law for over a year and do not represent any party in this action."  ECF No. 43, Ex. A.  BART also directed the Court's attention to an April 23, 2026 filing by Ms. Barnett-Rose in another case pending in this District in which she indicates "I have also been retired from the practice of law for over a year." *Id.*, Ex. B; *see Fergus v. San Francisco Bay Area Rapid Transit*, Case No. No. 3:25-cv-05993-TLT, ECF No. 42 (Notice of Non-Representation and Clarification of Counsel Status). Additionally, while Ms. Barsotti stated she was in a treatment facility and unable to work between April 2, 2026, to April 24, 2026, during this same time, on April 13, 2026, she filed declarations and oppositions to motions in an unrelated matter in state court against BART.  ECF No. 43, Ex. C (Oppositions to motions in *Gregson v. San Francisco Bay Area Rapid Transit District*, Alameda County Superior Court, Case No. 25CV107696).

Based on these submissions, the Court issued a third show cause order, directing Ms. Barsotti to file a written explanation by May 13, 2026 as to why her representations did not warrant sanctions under Federal Rule of Civil Procedure 11.  ECF No. 44.  The Court also directed Ms. Barsotti to serve a copy of the show cause order on Plaintiff and file proof of service by May 8, 2026.  Ms. Barsotti failed to respond.

### III.    DISMISSAL UNDER RULE 41(B)

BART first argues dismissal under Rule 41(b) is appropriate because "Plaintiff has not, and does not intend to, prosecute this case in good faith."  Mot. at 12.  It argues Plaintiff's failures to appear at court ordered hearings and conferences, participate in discovery, and abide by court orders establish a pattern of willful and bad faith conduct which has prejudiced both BART and the Court's ability to properly adjudicate this case.  *Id.*

**A.      Legal Standard**

Federal Rule of Civil Procedure 41(b) authorizes district courts to dismiss an action sua sponte "to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-33 (1962) (dismissal for failure to prosecute); *Yourish v. Cal. Amplifier*, 191 F.3d 983, 987 (9th Cir. 1999) (dismissal for failure to comply with court orders); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2005) ("[T]he consensus among our sister circuits, with which we agree, is that courts may dismiss under Rule 41(b) sua sponte, at least under certain circumstances."). However, dismissal is a harsh penalty and should be used only in extreme circumstances. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992). In determining whether dismissal is appropriate for the failure to comply with court orders or the failure to prosecute, courts consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Ferdik*, 963 F.2d at 1260-61). Dismissal is appropriate "where at least four factors support dismissal, or where at least three factors strongly support dismissal." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (quoting *Yourish*, 191 F.3d at 990).

**B.      Discussion**

The Court finds dismissal is not warranted under Rule 41(b). As to the first factor, "[t]he public's interest in expeditious resolution of litigation always favors dismissal" where there is a failure to prosecute. *Pagtalunan*, 291 F.3d at 642 (internal quotations and citation omitted). The same is true of the third factor, as a defendant is prejudiced where the "plaintiff's actions impaired [the] defendant's ability to proceed to trial or threatened to interfere with the rightful decision of the case." *Id.* (internal quotations and citation omitted). BART has set forth evidence that Plaintiff failed to respond to its discovery requests, failed to appear at the settlement conference and Plaintiff's deposition, and failed to comply with multiple court orders.

However, the remaining factors do not weigh in favor of dismissal. As to the second factor, "[t]he trial judge is in the best position to determine whether the delay in a particular case

United States District Court
Northern District of California

9

interferes with docket management and the public interest." *Pagtalunan*, 291 F.3d at 642. While the case has consumed some of the Court's time that could have been devoted to other cases, this is not a case in which all pretrial deadlines have passed and trial is looming. As to the fourth factor, BART has not previously requested less drastic sanctions, nor had the Court issued a show cause order and given Plaintiff an opportunity to explain any failure to prosecute. *See Villalobos v. Vilsack*, 601 F. App'x 551, 552 (9th Cir. 2015) (affirming district court's dismissal without prejudice for failure to prosecute after the plaintiff did not respond to order to show cause); *Gleason v. World Sav. Bank, FSB*, 2013 WL 3927799, at *2 (N.D. Cal. July 26, 2013) (same). Finally, under the fifth factor, "the public policy favoring disposition of cases on their merits strongly counsels against dismissal." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citing *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998)). This is especially so here, where Plaintiff's failure to meet deadlines and appear for court-scheduled hearings appears to be due to his counsel's failures, not his own. Opp'n at 3; Barsotti Decl. ¶¶ 3-9. "Although a party may be penalized for his counsel's actions, this court has 'acknowledged that the degree of a plaintiff's personal responsibility for malfeasance is relevant to the propriety of dismissal." *Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996) (cleaned up) (quoting *Malone v. United States Postal Serv.,* 833 F.2d 128, 134 (9th Cir.1987)); *Louen v. Twedt*, 2006 WL 2320564, at *6 (E.D. Cal. Aug. 10, 2006), *on reconsideration in part,* 2007 WL 915226 (E.D. Cal. Mar. 26, 2007) ("Because Plaintiff's counsel is to blame for her failures to comply with the orders, the sanction of dismissal in this case falls too heavily on Plaintiff."). Given Plaintiff's counsel's acceptance of responsibility, the Court finds this case does not present an extreme circumstance warranting dismissal. *See Ferdik*, 963 F.2d at 1260.

As at least three factors do not strongly support dismissal, the Court **DENIES** BART's motion for dismissal under Rule 41(b). *See Dreith*, 648 F.3d at 788.

## IV.    SANCTIONS UNDER RULE 37

BART next argues dismissal is appropriate under Rule 37(b)(2) because Plaintiff failed to respond to discovery, including his noticed deposition, and failed to obey the Court's order to respond to its discovery requests. Mot. at 12. In the alternative, BART argues the Court should

10

(1) issue monetary sanctions against Plaintiff and his counsel for their willful and bad faith conduct since the case's inception and (2) issue sanctions prohibiting Plaintiff from presenting any evidence, including his own testimony, to support his claims for liability and damages. *Id.* at 15.

## A.    Legal Standard

Under the Federal Rules of Civil Procedure, a court may impose sanctions against a party who "fails to obey an order to provide or permit discovery" or who "fails to obey an order entered under Rule 26(f)." Fed. R. Civ. P. 37(b)(2). Rule 37 "authorizes the district court to impose a wide range of sanctions if a party fails to comply with a discovery order." *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986). For example, "sanctions may include: an order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order; an order refusing to allow the disobedient party to support or oppose designated claims or defenses; or an order . . . dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." *U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 602 (9th Cir. 1988) (cleaned up). However, "[t]he district court's authority to issue the sanctions is subject to certain limitations: (1) the sanction must be just; and (2) the sanction must specifically relate to the particular claim at issue in the order." *Nat'l Med. Enters.*, 792 F.2d at 910.

"Sanctions are permissible under Rule 37 when a party fails to comply with a court order, regardless of the reasons." *Life Techs. Corp. v. Biosearch Techs., Inc.*, 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012); *see also Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 208 (1958) ("For purpose of subdivision (b)(2) of Rule 37, we think that a party 'refuses to obey' simply by failing to comply with an order. . . . [T]he willfulness or good faith of [a party], can hardly affect the fact of noncompliance and [is] relevant only to the path which the District Court might follow in dealing with [the party's] failure to comply.") (alterations added). "A court need not find bad faith before imposing sanctions for violations of Rule 37." *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 545 (N.D. Cal. 2009) (citation omitted). But where the court imposes terminating sanctions, "the sanctioned party's

11

violations must be due to the willfulness, bad faith, or fault of the party." *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (cleaned up).  Further, "[o]n considering a motion for sanctions, a district court may make factual findings and assess the credibility of witnesses." *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *9 (N.D. Cal. Apr. 24, 2020).

"Instead of or in addition to the orders above," a court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" to obey the discovery order, "unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  "The party to be sanctioned under Rule 37(b) carries the burden of demonstrating the existence of mitigating factors." *Cruz v. Nike Retail Servs., Inc.*, 346 F.R.D. 107, 111 (S.D. Cal. 2024) (citing *Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981)).

**B.     Terminating Sanctions**

BART first requests the Court dismiss Plaintiff's case under Rule 37(b)(2), which provides that "dismissal is a possible sanction for failure to obey discovery orders." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1056–57 (9th Cir. 1998); *see* Fed. R. Civ. P. 37(b)(2)(A)(v) ("If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders" including "dismissing the action or proceeding in whole or in part").  In the Ninth Circuit, courts employ the same five-part test as under Rule 41(b) to determine whether terminating sanctions are just:  "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Valley Eng'rs*, 158 F.3d at 1057 (cleaned up).  "[W]here a court order is violated, factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3 and 5, prejudice and availability of less drastic sanctions, are decisive." *Id.*  "What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations threaten to interfere with the rightful decision of the case." *Id.* (cleaned up).

"A terminating sanction, whether default judgment against a defendant or dismissal of a

plaintiff's action, is very severe." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). Thus, "[o]nly willfulness, bad faith, and fault justify terminating sanctions." *Id.* (cleaned up); *see also White v. Gonzales*, 2024 WL 1659896, at *3 (N.D. Cal. Apr. 16, 2024) ("Before imposing a terminating sanction under Rule 37(b)(2), a court must find that the litigant's violations of discovery orders were due to willfulness, bad faith, or fault of the party.") (cleaned up). "Willfulness is defined as disobedient conduct 'within the litigant's control.'" *Connecticut Gen. Life Ins. Co.*, 482 F.3d at 1096 (quoting *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1341 (9th Cir. 1985)). "In determining whether the disobedient conduct was beyond the party's control, the court may consider the party's motivations, and can consider his dilatory and obstructive conduct in the case and other related cases." *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 512 (C.D. Cal. 2022) (cleaned up). "Bad faith may be found when a party provides false or incomplete information during a deposition or in response to a discovery request." *Am. Career Coll. Inc. v. Medina*, 673 F. Supp. 3d 1139, 1150 (C.D. Cal. 2023) (cleaned up).

The Court finds terminating sanctions are not warranted under Rule 37(b)(2). As discussed above, the first and third factors could favor dismissal, as the public's interest in expeditious resolution of litigation always favors dismissal, and BART has set forth evidence that Plaintiff failed to respond to its discovery requests, failed to appear at the settlement conference and Plaintiff's deposition, and failed to comply with multiple court orders. However, the remaining factors do not favor dismissal. Public policy favors disposition of this case on its merits. While the case has consumed some of the Court's time, trial is not scheduled to begin until January 2027. The Court also notes Plaintiff's counsel has accepted responsibility for the failure to meet deadlines and appear for court-scheduled hearings, and that Plaintiff is prepared to proceed with the case in a timely manner. Opp'n at 3; Barsotti Decl. ¶¶ 10-11.

Finally, turning to the fifth factor, the availability of less drastic sanctions, "the district court must consider less severe alternatives and discuss them if it elects to dismiss." *U.S. for Use & Ben. of Wiltec Guam, Inc.*, 857 F.2d at 604; *Conn. Gen. Life Ins*, 482 F.3d at 1096 (The fifth factor asks "whether the court has considered lesser sanctions, whether it tried them, and whether

13

it warned the recalcitrant party about the possibility of case-dispositive sanctions."). Here, the Court has not previously warned that terminating sanctions were possible. *See Choudhuri v. Wells Fargo Bank, N.A.*, 2017 WL 5598685, at \*8 (N.D. Cal. Nov. 21, 2017) (declining to issue terminating sanctions where court had not warned about the possibility of case-dispositive sanctions); *Ho v. Pinsukanjana*, 2019 WL 2413029, at \*6 (N.D. Cal. May 15, 2019), *report and recommendation adopted in part, rejected in part,* 2019 WL 2410674 (N.D. Cal. June 7, 2019) (noting the same).

Under these circumstances, the Court finds that imposition of a dismissal sanction would be extreme and therefore **DENIES** BART's motion for terminating sanctions under Rule 37(b)(2).

**C.     Evidentiary Sanctions**

In the alternative, BART requests the Court order evidentiary sanctions against Plaintiff to prohibit him from presenting any evidence, including his own testimony, to support his claims for liability and damages. Mot. at 15. However, the Court must impose non-monetary sanctions that are "just" and related to the discovery order that the disobedient party did not follow. Fed. R. Civ. P. 37(b)(2)(C); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983). While Plaintiff failed to attend the December 29, 2025 telephonic discovery conference and failed to respond to the Court's subsequent order to file a joint discovery letter by January 6, 2026, *see* ECF Nos. 27-29, it now appears he was unaware of these requirements due to his counsel's unavailability. *See* Barsotti Decl. ¶¶ 3-5. The only remaining discovery order Plaintiff did not follow is the Court's January 13, 2026 order, in which the Court granted BART's motion to compel. ECF No. 33. However, BART reports that Plaintiff has served responses to its requests. Mot. at 5-6. While BART maintains these responses are inadequate, it has not moved for evidentiary sanctions related to these responses alone, instead jumping straight to a request to prevent Plaintiff from presenting any evidence whatsoever, which would effectively terminate his case. *See Ralon v. Kaiser Found. Health Plan, Inc.*, 2025 WL 833448, at \*4 (N.D. Cal. Mar. 17, 2025) (declining to order as established certain facts or deem defendant entitled to adverse inferences, finding "this sanction request amounts to a request for terminating sanctions."); *Goldberg v. TeachBK, Inc.*, 2026 WL 242035, at \*5 (N.D. Cal. Jan. 29, 2026) ("Jumping straight

United States District Court
Northern District of California

to terminating sanctions when such intermediate steps are available is improper.") (citing *U.S. for Use & Ben. of Wiltec Guam, Inc.*, 857 F.2d at 604 (endorsing courts imposing a "natural progression" of sanctions)).  Given that these failures appear to be the fault of Plaintiff's counsel, the Court finds BART's request is exceptionally harsh under the circumstances and therefore **DENIES** BART's request to prohibit Plaintiff from presenting any evidence.

### D.    Monetary Sanctions

BART seeks monetary sanctions in the amount of $31,288.75 for "Plaintiff's bad faith conduct" and requests the Court "order Plaintiff and his Counsel to pay said expenses for Plaintiff's inexcusable failure to prosecute this action."  Mot. at 15; Tran Decl. ¶ 34.

#### 1.    Legal Standard

When a discovery order has been disobeyed, the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure."  Fed. R. Civ. P. 37(b)(2)(C).  However, the Court may decline to award sanctions where the conduct at issue was "substantially justified" or "other circumstances make an award of expenses unjust."  *Id.*  "Sanctions are thus mandatory unless the Court makes one of the enumerated, exculpatory findings."  *Cruz*, 346 F.R.D. at 111 (citing *Notice v. DuBois*, 187 F.R.D. 19, 20 (D. Mass. 1999)).  The party to be sanctioned under Rule 37(b) carries the burden of demonstrating the existence of mitigating factors.  *See Liew*, 640 F.2d at 1050 (citing *David v. Hooker, Ltd.*, 560 F.2d 412, 419 (9th Cir. 1977)).  An otherwise sanctionable action could be "substantially justified" if "reasonable people could differ" over the appropriateness of the conduct.  *See Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (noting the "substantially justified" standard in Rule 37 does not mean "'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute'" about the propriety of the conduct at issue) (citing Advisory Committee's Notes on 1970 Amendments to Fed. Rule Civ. Proc. 37(a)(4)).

#### 2.    Whether an Award of Fees is Just

Both Plaintiff's failure to comply with the Court's January 13, 2026 discovery order and his failure to attend his noticed deposition qualify as grounds for sanctions.  *See Adriana Int'l*

15

United States District Court
Northern District of California

*Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) ("Failure to produce documents as ordered . . . is considered sufficient prejudice."); *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1116 (9th Cir. 2004) (same); *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994) (party's failure to appear at deposition prejudiced opposing party). However, the Court finds sanctions against Plaintiff would be unjust, as the record does not establish he was aware of these ongoing discovery issues and his counsel's failures. *See Bradshaw v. Vilsack*, 286 F.R.D. 133, 144 (D.D.C. 2012) (finding it would be unjust to impose a monetary penalty on plaintiff for the misdeeds of his attorney). Plaintiff's counsel admits as much. *See* Opp'n at 1 ("[T]he underlying cause was counsel's personal and medical circumstances and firm-management issues, not Plaintiff's conduct.").

As to whether monetary sanctions are appropriate against Plaintiff's counsel, Rule 37 "contemplates that the burden will fall on the individual responsible for the offending conduct." *Lee v. Walters*, 172 F.R.D. 421, 436 (D. Or. 1997). Thus, if the violations were caused by Ms. Barsotti, an award of expenses may be imposed only against her. *Id.* While Ms. Barsotti has accepted responsibility for her failures in this case, the Court finds there are extenuating circumstances given counsel's medical issues and related institutionalization. *See Hyde & Drath*, 24 F.3d at 1171–72 (finding a deponent's alleged illness could constitute a good faith dispute sufficient to render monetary sanctions unwarranted); *Bio-Rad Lab'ys, Inc. v. United States*, 687 F. Supp. 1580, 1580 (Ct. Int'l Trade 1988) (setting aside sanction order where attorney responsible for monitoring the action had recently been hospitalized for a serious physical disability and was undergoing intensive physical and psychiatric therapy as an outpatient).

At the same time, the Court has serious concerns regarding Ms. Barsotti's advocacy in this case. After discharging the initial order to show cause for failure to file an opposition, the Court issued a second order after determining that three of the four cases cited in Plaintiff's opposition do not exist and appear to have been caused by the use of generative artificial intelligence tools resulting in hallucinations. Ms. Barsotti did not respond to explain these discrepancies. The Court further notes she has failed to respond to a third order to show cause addressing BART's evidence that portions of her declaration submitted in response to the first show cause order appear

16

inaccurate, and she has also failed to file proof that she served these orders on Plaintiff. Further, even assuming the statements are accurate, the Court finds it troubling that Ms. Barsotti states she returned to work at least by March 6 and did not return to the facility for treatment until April 2, *see* Barsotti Decl. ¶¶ 6-8, but at no point during that month did she notify the Court of any impairment. And her conduct during that time, including communications with defense counsel and discovery production, suggest she was able to do so. *Id.* If counsel suffered from a physical or mental condition that impaired her ability to represent her client and comply with court orders, it was incumbent upon her to provide prompt and appropriate notification and perhaps, if necessary, to withdraw her representation. *See Rivera–Velazquez v. Hartford Steam Boiler Inspection & Ins. Co.*, 750 F.3d 1, 5 (1st Cir. 2014) (explaining in the context of a motion for Rule 60(b)(1) relief that an attorney's illness may qualify as an extraordinary circumstance but that the attorney must notify court of such illness unless the illness suggests a "complete inability" to communicate with the court); *Carcello v. TJX Cos., Inc.*, 192 F.R.D. 61, 64 (D. Conn. 2000) (in the same context, holding that illness alone is insufficient where attorney "failed to communicate with either opposing counsel or the court to apprise them of the serious nature of his medical condition he now claims to be the reason for his misfeasance"). Accordingly, the Court finds a monetary sanction against Ms. Barsotti is appropriate.

BART states that, through March 23, 2026, it incurred $27,238.75 in fees and costs "in defense of the action," and it estimates an additional $4,050 to reply to any opposition and to appear at oral argument. Tran Decl. ¶ 34. Of these fees, the only breakdown BART's counsel provides is related to the time spent on the instant motion. *Id.* ("From March 23, 2026, to date, I have spent approximately an additional 3.5 hours revising the instant Motion, and Ms. Heslop has additionally spent approximately an additional 3.5 hours revising the instant Motion."). The Court "has a great deal of discretion in determining the reasonableness of the fee." *Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 453 (9th Cir. 2010) (quoting *Gates v. Deukmejian,* 987 F.2d 1392, 1398 (9th Cir.1992)). Further, the Court must ensure that costs and fees awarded are "properly segregated to those expenses caused by the failure to obey court orders." *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1386 (9th Cir. 1988). Given its finding that dismissal is

United States District Court
Northern District of California

17

inappropriate, the Court finds an award of BART's entire fees and costs "in defense of the action" is not warranted. Further, while counsel's actions in failing to alert the Court and defense counsel of her medical issues may have been negligent, there is no evidence suggesting that counsel acted in bad faith. Accordingly, the Court shall base its award on the amount BART spent on its motion for sanctions, which is the only amount it states with specificity.

### 3.    Amount of Attorneys' Fees

When an award of attorneys' fees is authorized, the court must calculate the proper amount of the award to ensure that it is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). In the Ninth Circuit, courts perform a two-step process to determine the reasonableness of any fee award. *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, the Court determines the "lodestar figure." *See Gates*, 987 F.2d at 1397. "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). Second, where appropriate, the Court may adjust the lodestar amount based on several factors adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), known as the *Kerr* factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.*

A strong presumption exists "that the lodestar figure represents a reasonable fee." *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996). The Ninth Circuit has made clear that "[o]nly in rare instances should the lodestar figure be adjusted on the basis of other considerations." *Id*. (citations omitted). "Under the lodestar approach, many of the *Kerr* factors have been subsumed as a matter of law." *Id*. (citation omitted). The *Kerr* factors that are

18

subsumed within the initial lodestar calculation are the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, the results obtained in the action, and the contingent nature of the fee agreement. *Id*. at 364 n.9 (citations omitted). "Adjusting the lodestar on the basis of subsumed reasonableness factors after the lodestar has been calculated, instead of adjusting the reasonable number of hours or reasonable hourly rate at the first step, i.e. when determining the lodestar, is a disfavored procedure." *Id*. (citation omitted).

The party seeking the award of fees must submit evidence to support the request. *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Specifically, the party must support the request with evidence regarding the "number of hours worked and the rates claimed." *Id*. The party opposing the fee request bears the "burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in submitted affidavits." *Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002) (quoting *Gates*, 987 F.2d at 1397).

BART seeks fees for the work of its counsel, Ronald Q. Tran and Regan M. Heslop. Tran Decl. ¶¶ 1, 7. Mr. Tran's hourly rate is $360, and Ms. Heslop's hourly rate is $315. *Id.* ¶ 34. Mr. Tran spent 3.5 hours on the instant motion, while Ms. Heslop spent an additional 3.5 hours on the motion, leading to a total fee of $2,362.50. *Id.* The Court finds the rates charged by counsel and the amount of time they spent on the motion are reasonable. Further, Plaintiff has failed to submit any evidence challenging the accuracy and reasonableness of the hours charged. Accordingly, the Court shall award sanctions against Ms. Barsotti in the amount of $2,362.50.

## V.   INHERENT POWERS

A district "court has the inherent power to sanction a party or its lawyers if it acts in willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as well as for willful abuse of the judicial processes." *Gomez v. Vernon*, 255 F.3d 1118, 1133–34 (9th Cir. 2001) (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766 (1980)) (cleaned up). "[T]he district court may not sanction mere 'inadvertent' conduct." *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001). Rather, the imposition of sanctions under the court's inherent powers requires "a finding of bad faith, or conduct tantamount to bad

United States District Court
Northern District of California

19

United States District Court
Northern District of California

faith." *Gomez*, 255 F.3d at 1134. "[R]ecklessness, of itself, does not justify the imposition of sanctions" under the Court's inherent power. *Id.* However, "sanctions are available when recklessness is combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* (cleaned up). "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." *Fink*, 239 F.3d at 992 (cleaned up).

Here, BART has presented no argument for sanctions under the Court's inherent powers that is not tied to its arguments discussed above. As such, the Court finds further sanctions unnecessary and **DENIES** BART's motion for sanctions under its inherent authority.

## VI.    MOTION TO CHANGE DEADLINES

BART also moves pursuant to Civil Local Rule 6-3 to extend the following Case Management Deadlines *as to BART only*:

| ORIGINAL CASE MANAGEMENT DEADLINES | | |
|---|---|---|
| | CURRENT | PROPOSED |
| Close of Fact Discovery | 4/16/2026 | 7/16/2026 |
| Disclosure of Expert Witnesses | 5/14/2026 | 7/16/2026 |
| Disclosure of Rebuttal Expert Witnesses | 6/11/2026 | 8/13/2026 |
| Close of Expert Discovery | 7/9/2026 | 9/10/2026 |
| Deadline to File Dispositive Motions | 8/6/2026 | 10/1/2026 |
| Hearing on Dispositive Motions | 9/10/2026 | 11/5/2026 |

ECF No. 38. BART makes this request because "[d]espite repeated attempts, Defendant BART has been unable to obtain the discovery necessary to support a motion for summary judgment and/or prepare this case for trial. Plaintiff should not be consequently rewarded for his consistent and willful discovery delays with a mutual extension of fact discovery – Defendant BART requests the extension be applicable only to it." *Id.* at 5. For the reasons discussed above, the

20

Court finds BART's request could effectively terminate Plaintiff's case, leaving him unable to complete discovery due to his counsel's admitted failures, not his own.  The Court declines to impose such a harsh penalty and therefore **DENIES** BART's motion.

Given Ms. Barsotti's statements, the Court is hopeful that this litigation can now proceed on the merits in a timely fashion.  The current schedule makes this unworkable, as fact discovery is now closed and the parties have not attended a mandatory settlement conference with Judge Tse, which they must do prior to the dispositive motion deadline.  Accordingly, the Court **ORDERS** the parties to meet and confer and thereafter file a joint statement proposed case schedule or competing case schedules by June 15, 2026.  Prior to submitting their proposed schedule, the parties shall contact Judge Tse's courtroom deputy to reserve a settlement conference date that is earlier than their proposed dispositive motion deadline.

### VII.   CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** BART's motion for sanctions as follows:

1)  BART's motion for terminating sanctions is **DENIED**.

2)  BART's motion for evidentiary exclusion sanctions is **DENIED**

3)  BART's motion for an award of reasonable attorney's fees is **GRANTED IN PART** against Jessica Barsotti in the amount of $2,362.50.  Within 21 days of the date of this order, Ms. Barsotti shall pay this sanction to BART.

The Court **DENIES** BART's motion to change deadlines as to BART only.  Instead, the parties shall meet and confer and thereafter file a joint proposed case schedule or competing case schedules by June 15, 2026.  Prior to submitting their proposed schedule, the parties shall contact Judge Tse's courtroom deputy to reserve a settlement conference date that is earlier than their proposed dispositive motion deadline.

Plaintiff and his counsel are advised that the Court will not tolerate any further failure to comply with their responsibility to prosecute this case, including discovery obligations and complying with court orders.  Any such failure could result in further sanctions, including and up to dismissal of this action.

21

Counsel Jessica Barsotti shall serve a copy of this Order Plaintiff Karl Gregoire and shall file proof of service by June 8, 2026.

**IT IS SO ORDERED.**

Dated: June 1, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

22